IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **GERMAINE CANNADY** | : | |
| Petitioner | : | |
| | | Crim. No. RDB-14-0389 |
| v. | : | Civil No. RDB-19-2612 |
| **UNITED STATES OF AMERICA** | : | |
| Respondent | ...o0o... | |

### GOVERNMENT'S RESPONSE MEMORANDUM
### TO PETITIONER'S MOTION TO VACATE SENTENCE
### UNDER 28 U.S.C. § 2255

Now comes the United States of America, by and through its counsel, Robert K. Hur, United States Attorney for the District of Maryland, and Christopher J. Romano, Assistant United States Attorney for the District of Maryland, and respectfully submits this response to Petitioner's motion pursuant to 28 U.S.C. § 2255.

**I.     PROCEDURAL SUMMARY OF THE CASE**

Petitioner, Germaine Cannady was indicted along with 8 others on federal drug charges on August 22, 2014. (ECF # 70). Count One of the indictment alleged that Cannady and others unlawfully conspired to knowingly and intentionally distribute and possess with intent to distribute cocaine and heroin in violation of 21 U.S.C. § 841(a)(1). In addition to the conspiracy charge, each defendant was individually charged with attempting to possess with the intent to distribute a certain quantity of illegal narcotics.

Five of the defendants pleaded guilty before trial. Four others—Cannady, Dominic "Nic" Parker, Cornell "Nelly" Brown, and Ronald Sampson—proceeded to trial. Following an 8-day trial, the jury returned guilty verdicts against all four defendants on both the conspiracy and attempt

charges. (ECF # 201). Cannady and the others appealed, but not before Cannady was sentenced to 192 months' imprisonment. (ECF # 304).

After Cannady and the other defendants' appeals were filed, the district court granted their motion for a new trial based on a perceived violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (ECF # 403). The government appealed from the district court's order and the Fourth Circuit, by per curiam opinion on March 9, 2018, reversed the district court's order granting a new trial, finding that the information at issue was not material for purposes of *Brady*. *United States v. Cannady*, 719 Fed. Appx. 237 (4th Cir. 2018).

On remand from the Fourth Circuit, this Court reinstated Cannady's sentence of 192 months' imprisonment. Cannady then filed yet another appeal to the Fourth Circuit, which affirmed Cannady's convictions and sentences. *United States v. Cannady*, 924 F.3d 94 (4th Cir. 2019).

On September 9, 2019, Cannady filed a motion to vacate under 28 U.S.C. §2255. (ECF # 501). In his petition, Cannady argued that his counsel was ineffective by (1) allowing the government to knowingly present false testimony regarding the non-existence of a tally sheet; (2) allowing the government to present false testimony that oxycodone and oxycontin pills were not seized from Cannady; (3) allowing the government to present false testimony about a witness's (Michael Barrett) testimony that he was not given any oxycodone or oxycontin pills during a proffer session on August 7, 2014.

Subsequent to filing that motion, on October 7, 2019, Cannady filed a motion to amend his 2255 petition. (ECF # 503). In his amended motion, Cannady also asserts that both his sentencing attorney and appellate attorney failed to challenge Cannady's designation as a career offender.

By Order dated, September 9, 2019, this Court ordered the Government to file a response to Cannady's initial motion within 60 days of the Court's order. (ECF # 502). As none of Cannady's arguments has merit, the government's response will deal with

2

both Cannady's original and amended motion as well.

II. **ARGUMENT:**

    **A. The government did not knowingly allow false testimony testimony regarding the tally sheet.**

Cannady claims his counsel provided ineffective assistance by failing to argue that the government committed prosecutorial misconduct by knowingly allowing false testimony regarding the tally sheet. Cannady argues that because both Michael Barrett and FBI Special Agent Eric Nye denied the existence of any tally sheets and one was found to exist, this constituted prosecutorial misconduct and that according to Cannady, "there is a reasonable likelihood that the false testimony could have affected the judgment of the jury." Cannady's Addendum In Support of 28 U.S.C. § 2255 at 9. Cannady's argument fails on at least three levels. First, there is no concession by the government that the testimony of Barrett and Special Agent Nye was perjurious, or that the alleged perjury occurred with the government's knowledge. Second, as this Court will recall, that upon the government discovering the existence of the so-called tally sheet, it immediately brought to the Court and defense counsel's attention the existence of the document and provided a copy of same. At the hearing on the defendants' motion for new trial based on the discovery and disclosure of the "tally sheet," this Court made clear that the prosecutors had acted ethically in disclosing the document, once it had been discovered. Indeed, the Court had this to say: "[T]he record will reflect that there's been no impropriety committed by Assistant U.S. Attorneys Christopher Romano or Seema Mittal, who have the highest respect from this Court." Ex. 1. Third, the Fourth Circuit in *Cannady*, held that the recovery of the tally sheet may have undermined Michael Barrett's testimony on one point and the tally sheet was not only cumulative impeachment but was of "minimal impeachment value" and its non-disclosure did not put the whole case in such a different light as to undermine

confidence in the verdict." *Cannady*, 719 Fed. Appx. at 241. Thus, Cannady's argument lacks merit, as the Fourth Circuit has rejected the precise argument Cannady makes here.

> **B. The government did not knowingly present or allow false testimony regarding that oxycodone and oxycontin pills were not seized from Cannady.**

Cannady next argues that the government allowed false testimony from an FBI agent regarding the seizure of oxycodone and oxycontin pills from Cannady. Cannady, in an effort to support this argument, provides excerpts of the testimony of FBI Special Agent Kehoe that the Special Agent did not recall recovering/seizing any pills from Cannady. Cannady's Addendum In Support of 28 U.S.C. § 2255 at 16-17. Aside from the fact that Special Agent Kehoe's failure of recollection is not a "denial," as Cannady claims, the government stipulated at trial that the pills came from Cannady and the pills were introduced as Cannady trial exhibit 11. *See* Cannady's Addendum In Support of 28 U.S.C. § 2255 at 18. Cannady claims his defense was premised on the only reason he met with Michael Barrett was to give him the pills and not to obtain heroin and cocaine. The jury heard all the testimony that Cannady points to in his Addendum and chose to accept the reason Cannady met with Barrett was to indeed acquire cocaine and heroin, as reflected in their verdict finding Cannady guilty.

> **C. The government did not present or allow false testimony about a witness's (Michael Barrett) testimony that he was not given any oxycodone or oxycontin pills during a proffer session on August 7, 2014.**

Similar, to the argument Cannady makes above, Cannady also alleges that the government offered false testimony by both Michael Barrett and S/A Eric Nye regarding whether and if Barrett had been provided pain medication (percocets) prior to, or during, an interview conducted by FBI S/A Nye on August 7, 2014. Cannady's claims that "when Agent Nye begins the interview, Barrett is in no way coherent (sic), organized or of sound mind." Cannady's Addendum In Support of 28 U.S.C. § 2255 at 20.

4

Cannady's assertion was contradicted by both the testimony of Barrett and S/A Nye.

Barrett testified to the following:

Q. When you were interviewed on August 6 and August 7, did you understand the questions that were being asked of you?

A. Yes, Yes I did.

Q. Did you have any difficulty understanding what was being asked of you?

A. No, not at all.

Exhibit 2.

Similarly, S/A testified that Barrett regarding the interview on August 7, 2014:

Q. And in speaking with Mr. Barrett on August 7, 2014, did he appear to be under the influence of any type of alcohol or drugs?

A. No sir.

Q. During the course of that interview did you discuss with him any pain medication that he had been taking?

A. Yes, sir…

Q. Okay. Throughout the interview, did Mr. Barrett appear to be coherent, capable of understanding or answering your questions?

A. Yes, sir.

Exhibit 3.

In the interview, portions of which were played before the jury, Cannady falsely asserts Barrett was "practically begging for oxycodone pills," and '[t]he interview session abruptly ends with Barrett bemoaning: 'Right now, I don't know what's going on.'" Cannady's Addendum In Support of 28 U.S.C. § 2255 at 20- 21. Cannady goes on to argue that Barrett's demeanor changed during the course of the interview, "no longer experiencing withdrawal symptoms or asking for medication. *Id.* From this, Cannady posits that Barrett must have been given medication <u>during</u> the interview, even though Barrett testified he had not. He also attempts to discredit Barrett's

5

testimony, by pointing to S/A Nye's testimony that Barrett was given "his oxycodone on August 7, (albeit **after** the interview was completed which petitioner asserts is false based on the video evidence)." *Id.* at 23. (emphasis in the original). Attached as Exhibits 4-A and 4-B are CDs of the interview.[1] Not only is Barrett not "begging," but his comment that he does not know what is going on, relates to whether he should continue to cooperate while awaiting consultation with his attorney, not his mental or physical status/condition. Indeed, as the video shows, he calls a family member and discusses his situation as to whether to cooperate or not.

Both Barrett and S/A Nye made clear in their testimony that no medication was provided to Barrett prior to or during the interview. While Barrett told the jury he was not provided medication at all, S/A Nye testified that Barrett may have received medication after the interview.[2]

Canady argues that because Barrett testified he never was given medication prior to, or during, the August 7, interview and S/A Nye testified that Barrett was provided with prescription medication in Barrett's name sometime after the interview, that both Barrett and Nye were lying and thus, their testimony was perjurious. Cannady's argument is grounded on <u>his</u> description of the video tape of the interview. Of course, the jury saw the video and heard the testimony of both Barrett and S/A Nye and were in a position to assess what they observed on the videos, as well as evaluating the testimony of both Barrett and S/A Nye.

---

[1] Cannady requests the videos be viewed by the Court. Courtesy copies of the videos are being provided to the Court in order for the Court to make its own independent assessment as to whether Barrett is "begging" for his medication; the context of Barrett's statement about not knowing what was going on; and whether Barrett was "incoherent and experiencing extreme withdrawal symptoms." The CDs will not be exhibits filed on ECF.

[2] On cross-examination of S/A Nye, when asked if Barrett ever obtained any medication between August 7 and August 11, 2014, S/A Nye testified that he did not recall the specific date, but it "had to be the 7th or the 11th, one of those days." Exhibit 5.

At trial, Barrett was vigorously cross-examined by not only Cannady's counsel, but counsel for Cannady's co-defendants as well. Indeed, Barrett was on the witness stand for three days. Cannady's claim what he terms the "false impression" that Barrett was not intoxicated during the August 7th proffer session," Cannady's Addendum In Support of 28 U.S.C. § 2255 at 27 is not based in fact, rather wishful thinking.

### D. Cannady cannot challenge the calculation of his advisory guideline range in a § 2255 proceeding.

At the outset, Cannady's claim fails because a petitioner generally cannot use § 2255 to challenge the calculation of his advisory guideline range. *Best v. United States*, 2017 WL 2799846, at *2 (E.D. N.C., Apr. 20, 2018) (citing *United States v. Foote*, 784 F.3d 931, 932, (4th Cir. 2015)). The United States Supreme Court has instructed that only those errors presenting a fundamental defect which creates a complete miscarriage of justice can be corrected on collateral review. *Foote*, 784 F.3d at 932 (citing *Davis v. United States*, 417 U.S. 333, 346 (1974)). A career offender designation that has been nullified does not present a claim that is cognizable on collateral review. *Foote*, 784 F.3d at 932.

Additionally, Cannady's criminal history score had no impact on the sentence he received. Therefore, he was properly sentenced and his motion to reopen his sentencing has no merit and should be dismissed and/or denied.

Assuming *arguendo*, that Cannady is not procedurally barred from challenging his career offender status, what he fails to recognize, or ignores, is that the sentence he received was in no way dependent on whether he was considered to be a career offender. The government in seeking a sentence for Cannady of 20 years stated:

> Your Honor, let me begin by saying that the Government's Recommendation is not pegged to the Advisory Guideline range. I think, quite frankly, the Advisory Guideline Range, when we look at this particular individual is irrelevant.

Exhibit 6.

This Court agreed, stating that the guideline

> [R]ange is not reasonable, and the Government has been very
> professional in not recommending that guideline range.
> The Government has recommended a sentence below that
> guideline range, as it should, because the range is not a reasonable
> range of - - 262 to 327 months is, in fact <u>not</u> a reasonable range.

Exhibit 7. (emphasis added).

This Court in imposing its sentence of 192 months clearly based its sentencing determination not on whether or not Cannady was a career offender, but rather on the factors under 18 U.S.C. § 3553(a).

### E. Cannady has failed to establish that his counsel were ineffective.

There is a presumption that Cannady's counsel were competent. *United States v. Cronic*, 466 U.S. 648 (1984). *Strickland* requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Even if defense counsel's performance is outside the wide range of professional assistance, an error by counsel will not warrant setting aside the conviction if the error had no effect on the judgment. *Id.* at 694.

A petitioner meets the requirements for ineffective assistance of counsel only by demonstrating that his/her "attorney['s] performance fell below an objective standard of reasonableness and that [he/she] suffered prejudice as a result." *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999). The Supreme Court has divided this into a two-part test to determine whether a petitioner received adequate assistance of counsel. *Strickland* 466 U.S. at 689-694; *see also Roach v. Martin*, 757 F.2d 1643 (4th Cir. 1985); *Hill v. Lockhart*, 474 U.S. 52 (1985); *Mikalajunas*, 186 F.3d at 493. In order to establish the first part of the test, a petitioner must show

that his/her counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Strickland*, 466 U.S. at 687. There is a strong presumption that counsel's conduct was within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 689. The Fourth Circuit holds that:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too easy for a defendant to second guess counsel's assistance after conviction[.] . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Roach*, 757 F.2d at 1476.

To satisfy the second part of the *Strickland* test, a petitioner must show that there is a "reasonable probability that <u>but</u> <u>for</u> counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. (emphasis added). The prejudice component of the *Strictland* test focuses on the question whether counsel's alleged deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Id*. at 687. *See also*, *Kimmleman v. Morrison*, 477 U.S. 365, 393 (1986). To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy both parts of the *Strickland* test. *Dooley v. Petsock*, 816 F.2d 885, 889 (3rd Cir. 1987). Clearly, Cannady has done neither.

### III. <u>CONCLUSION</u>.

Because Cannady has failed to show that his attorneys' performances fell below an objective standard of reasonableness <u>and</u> that he suffered prejudice as a result, his motion

regarding such claims should be denied without a hearing.

                                        Respectfully submitted,

                                        Robert K. Hur
                                        United States Attorney

By: _____/s/_____
                                        Christopher J. Romano
                                        Assistant United States Attorney
                                        36 S. Charles St.-4th Fl.
                                        Baltimore, Maryland 21201
                                        (410)209-4907

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this __7th__ day of November, 2019, a copy of the foregoing Government's Response Defendant's Motion to Vacate Sentence Under 28 U.S.C. § 2255 was electronically filed with a copy to Petitioner transmitted via U.S. mail.

Germaine Cannady
Inmate # 33376-037
FCI SCHUYLKILL
PO BOX 759
MINERSVILLE, PA 17954

_____/s/_____
Christopher J. Romano
Assistant United States Attorney